UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In Re:<br><br>TLFO, LLC,<br><br>    Reorganized Debtor.<br>_____/<br>TRANSUNION RISK AND<br>ALTERNATIVE DATA SOLUTIONS,<br>INC.,<br>    Plaintiff,<br><br>    v.<br><br>INTERACTIVE DATA, LLC,<br>MARLIN CAPITAL PARTNERS I,<br>LLC, MICHAEL BRAUSER, and<br>THE BEST ONE, INC.,<br><br>    Defendants.<br>_____/ | Case No. 13-20853 (PGH)<br>Chapter 11<br><br><br><br><br><br><br><br><br>Ad. Pro. No. 14-01793 (PGH) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO DISMISS FIRST AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT**

**INTRODUCTION**

In December of 2013, plaintiff TransUnion Risk and Alternative Data Solutions, Inc. ("TRADS"), paid $154 million to acquire substantially all of the assets (the "Sale") of the above-captioned (now-reorganized) debtor (the "Debtor"). Compl. ¶¶ 2-3, ECF No. 21.[1] TRADS's substantial payment not only permitted the Debtor to pay in full all of its creditors—including a company controlled by Michael Brauser ("Brauser"), now Chairman of defendant The Best One, Inc. ("TBO")—but also provided a meaningful return to equity holders such as Ole Poulsen

---
[1] All references herein to "Complaint" or "Compl." are to the First Amended Complaint for Declaratory Judgment filed by TRADS on January 13, 2015, ECF No. 21.

1

6266183-1

("Poulsen"), TBO's Chief Scientific Officer. *Id.* ¶¶ 2, 5, 11, 28, 29, 34, & 52. However, long after the Sale closed, TBO asserted, for the first time, that it owned intellectual property that TRADS had acquired in the Sale "'free and clear of all liens, claims, encumbrances, liabilities and other obligations and other interests'" and attempted to extort even more money from TRADS for the use of that property. *Id.* ¶ 3 (quoting this Court's Sale Order, Case No. 13-20853, ECF No. 610 (the "Sale Order"), at 12). *See also* Compl. ¶¶ 11 & 49-54.

TBO's assertion is wrong. Included in the Sale as "Acquired Assets" was the Debtor's intellectual property, including—as identified in both the Sale Order and its attached Amended and Restated Asset Purchase Agreement, Case No. 13-20853, ECF Nos. 610-1 through 610-5 (the "APA")—the BParser code converter software ("BParser") and the BOLT software language ("BOLT") (collectively, along with any other intellectual property of the Debtor in which TBO claims an interest, the "IP"). *See* Compl. ¶¶ 4, 6, 10, & 25-27; Sale Order ¶¶ T & 5; APA, § 1.1(a)(ii), ECF No. 610-1, p. 2; APA, Schedule 1.1(a)(ii), ECF No. 610-4, p. 35. The Sale Order also approved the Sale of "all intellectual property or any of the other assets used or useful by the Debtor in the conduct of the Business of the Debtor," including "the BParser code converter software," "free and clear of" "any interest of any kind in the[m]" that was held or asserted by Poulsen, "pursuant to section 363 (f) and/or 363 (h) of the Bankruptcy Code . . . ." *Id.* ¶¶ U & V. *See also* Compl. ¶ 26. TRADS paid $154 million to purchase the Debtor's assets in reliance on these provisions of the Sale Order. Compl. ¶ 27; Sale Order ¶ X.

TBO's attempt to extract even more money from TRADS for the "right" to use the IP that TRADS has already purchased at great expense contravenes these and other provisions of the Sale Order. Compl. ¶¶ 11-12, 15-16, 25-27, & 49-54. In order to protect the rights it acquired through the Sale and to ensure compliance with this Court's Sale Order, TRADS has filed its

6266183-1

Motion to Enforce the Sale Order and to Hold TBO in Contempt for Violating the Sale Order in the main bankruptcy case, ECF No. 1282, along with its Complaint in this adversary proceeding.

TRADS's entitlement to relief is straightforward. Once the time to appeal has lapsed, both "a party to the sale proceeding [and any] . . . successor to that party" are "barred by res judicata" from challenging an order like the Sale Order. *In re Met-L-Wood Corp.*, 861 F.2d 1012, 1016 (7th Cir. 1988) (Posner, J.). Moreover, such a person "is bound by [a bankruptcy] [c]ourt's . . . sale orders [under section 363] even if it was not a party to—or did not have notice of—the sale proceedings." *In re Steffen*, 464 B.R. 450, 458 (Bankr. M.D. Fla. 2012). This is because a "proceeding under section 363 is an *in rem* proceeding. It transfers property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding." *In re Met-L-Wood*, 861 F.2d. at 1017.

Thus, after the time to appeal had run, "the sole remedy for challenging" the Sale Order available to Poulsen, TBO, or anyone else was "under Federal Rule of Civil Procedure 60(b)" (as made applicable here by Bankruptcy Rule 9024). *In re Steffen*, 464 B.R. at 458; *accord In re Met-L-Wood*, 861 F.2d at 1018. But Rule 60(c) mandates that, at a minimum, any "motion made under Rule 60(b) must be made within a reasonable time . . . ." This reasonableness requirement is particularly important in section 363 sales because, "[u]nless bankruptcy sales are final when made, rather than subject to being ripped open years later, high prices will not be offered for the assets of bankrupt firms—and the principal losers (pun intended) will be unsecured creditors." *In re Met-L-Wood*, 861 F.2d at 1019.

The record of this bankruptcy case shows that Poulsen, Brauser, and others associated with TBO obtained notice of the Sale and the Sale Order, both before and again after the consummation of the Sale and the entry of the Sale Order. Compl. ¶¶ 28-48. However, Poulsen

3

never made a Rule 60(b) motion—not after he was served with the Sale Order at his home in Oregon; and not even after he participated in the bankruptcy case following the Sale. *See* Compl. ¶¶ 37-39 & 45-48.  The same is true of TBO.  It was entirely unreasonable for Poulsen to strategically bide his time and sit on his "rights" for months while TRADS operated its business under the justified and reasonable belief that its $154 million had purchased the IP—particularly since not only the Debtor's creditors, including Brauser, but Poulsen himself, as an equity holder in the Debtor, reaped a substantial financial benefit from this high purchase price.  *Cf.* Compl. ¶¶ 2, 5, 23, 29, 46, & 47.  Thus, when Brauser (apparently acting on behalf of TBO) contacted TRADS on October 15, 2014, to claim that TBO owned the IP, Poulsen's and TBO's *laches* had long since foreclosed any modification to the Sale Order.  *Cf.* Compl. ¶¶ 11 & 51.

TBO plainly has no answer to these indisputable facts and case law—that much is apparent from the paucity of argument found in its two-pronged Motion to Dismiss First Amended Complaint for Declaratory Judgment, ECF No. 42 (the "Motion").  **First**, TBO's argument that the Complaint runs afoul of Rule 8 is frivolous.  TBO blithely asserts that "the Complaint is a behemoth, weighing in at 26 pages, nearly 70 paragraphs, and ten footnotes." Mot. 2.  The Complaint is actually 23 pages,[2] and it bears no resemblance to the rambling, flabby, and diffuse complaints dismissed in the cases upon which TBO relies.  *Cf.* Mot. 2-5. TBO has ample notice of the claims against it.  **Second**, TBO asserts that the Complaint should be dismissed, apparently in full, because "it fails to plead the requisite elements to obtain the mandatory injunction that it seeks" fares no better.  *Id*. ¶ 2.  That "mandatory injunction" appears to be a mistaken reference to TBO's request for declaratory relief.  But even if TBO's mischaracterization reflected reality, it would not matter.  Declaratory relief can issue even when

---

[2] The allegations and prayer for relief in the Complaint only run for 23 pages.  *See* Compl. 1-23.  The last three pages consist of a signature block and the Certificate of Service.  *Id*. 24-26.

injunctive relief cannot, and injunctive relief can then be premised on the declaration—even if a complaint does not adequately plead entitlement to it.

TBO's Motion is merely a delaying tactic, the aim of which is to avoid answering the factual allegations in the Complaint. This is particularly egregious given the Court's recent decision to narrow discovery at this time, so that the Court can address the threshold issues of the effect of its Sale Order. Were TBO's filibuster to succeed in significantly delaying its time to file an Answer, TRADS would be deprived of the ability to conduct effective discovery on TBO's defenses. The Motion is bereft of merit, and only frustrates this Court's discovery ruling. The Court should, therefore, deny the Motion and order TBO to serve its answers and affirmative defenses within seven days of the entry of this Court's order denying the Motion. *Cf.* Rule 12(a)(4) (default 14 day deadline for service of responsive pleading following denial of a Rule 12 motion "[u]nless the court sets a different time").

## ARGUMENT

**I.     The Complaint Complies With Rule 8.**

Twenty-three pages does not a "behemoth" make. Mot. 2. A simple comparison of TRADS's Complaint with the pleadings found to have violated Rule 8 in the cases cited by TBO is sufficient to dispose of TBO's attack on the purported prolixity of the Complaint. In most of those cases the complaints were drafted by *pro se* plaintiffs, and all were simply incomprehensible.[3] In fact, the lawyer-drafted complaint in *Gordon v. Green*, 602 F.2d 743 (5th

---

[3] Specifically: *Danois v. Bank of Am., N.A.*, 2014 WL 4426274, at *1 (S.D. Fla. Sept. 9, 2014) ("[P]ro se Complaint [was] muddled and confusing," "mix[ing]. . . factual allegations with descriptions of a[n] . . . investigation that may or may not be relevant to the suit, and with policy rationales behind certain consumer protection statutes[, and containing many allegations that] are no more than threadbare conclusions." (citations omitted)); *Kleinschmidt v. Liberty Mut. Ins. Co.*, 142 F.R.D. 502, 504 (S.D. Fla. 1992) (court "cannot determine . . . what in fact is being alleged" in the *pro se* plaintiffs' "forty pages of allegations"); *McCants v. Rouse*, 2010 WL 4682812, at *1 (N.D. Fla. 2010) (*pro se* prisoner "[p]laintiff's third amended complaint does not comply with Rule 8, as it is some thirty-nine pages of repetitive allegations"); *Thomas v. American Tobacco Co.*, 173 F.R.D. 546, 547 (M.D. Ga. 1997) ("110 handwritten pages" filed by *pro se* prisoner); *Barrett v. City of Allentown*, 152 F.R.D. 50, 53 (E.D. Pa. 1993)

5

Cir. 1979), "total[ed] over 4,000 pages, occup[ied] 18 volumes, and require[ed] a hand truck or cart to move," and was described as "disorganized and sometimes conflicting, with a mish-mash of so-called evidentiary materials, citations of authority, and other things," *id.* at 744-45.

Unlike the defendants in these cases, TBO has full notice of the claims brought against it. Indeed, the Motion conspicuously fails to identify a single provision of the Complaint that is confusing or unclear.  TBO has neither challenged the jurisdiction of this Court under Rule 12(b)(1), nor moved for TRADS to make a more definite statement under Rule 12(e).  In fact, TBO seems to contradictorily demand an even longer Complaint, containing the supposed magic words necessary to obtain injunctive relief.  *See* Mot. 5-6; *but see* § II, *infra*.

Perhaps recognizing that it is hornbook law that "fact based or detailed pleading is not uncommon, especially in complex cases," 5 Federal Practice & Procedure Civil § 1281 (3d ed.), TBO instead focuses its prolixity attack on two more specific aspects of the Complaint.

First, TBO argues that the subsequent expansion of allegations summarized in the Complaint's Preliminary Statement warrants dismissal.  Mot. 3.  But this stylistic criticism of TRADS's provision of a roadmap to the Court is no reason to dismiss.  The Background section's expansion on the Preliminary Statement with detailed factual allegations is simply not repetitive, let alone confusing, prolix, or obfuscatory.  Compl. ¶¶ 1-17 & 21-54.

The complaints in the cases that TBO cites are entirely distinguishable.  Even if the Complaint were "repetitive"—and it is not—TBO has never suggested that it is "conclusory," like the one in *McCants*, 2010 WL 4682812, at *1.  And 23 pages is not "lengthy," *id.*, in light of the complex history here, including the shifting cast of individuals and companies affiliated with Brauser.  *Cf., e.g.*, Compl. ¶¶ 41-48 & 52-54.  Even more striking is the contrast with the

---

(*Pro se* plaintiffs "filed a 21-count complaint replete with rambling allegations which are difficult to comprehend," that included "a 35-page legal argument in support of their complaint.").

6

"needlessly lengthy, verbose, and repetitious document containing numerous conclusory assertions, theories, and detailed recitations of evidence" that was the *pro se* prisoner's 110-page handwritten complaint in *Thomas*, upon which TBO also relies.  173 F.R.D. at 546-47.

Second, TBO asserts that five sentences in the Complaint are legal arguments and that this too warrants dismissal.  Mot. 3-4.  But the admonition of some courts to refrain from legal argument in pleadings upon which TBO relies has been applied only in the most extreme cases, such as the "35-page legal argument" in *Barrett*, 152 F.R.D. at 53.  Indeed, "the federal rules do not prohibit the pleading of facts or legal conclusions as long as fair notice is given to the parties."  5 Fed. Prac. & Proc. Civ. § 1218.  *See also, e.g.*, *United States v. Employing Plasterers Ass'n of Chicago*, 347 U.S. 186, 188 (1954) (Complaint's allegation "that the effect of all these local restraints was to restrain interstate commerce[,]" whether considered to be "'allegations of fact' or 'mere conclusions of the pleader,' . . . must be taken into account in deciding whether the Government is entitled to have its case tried.").  To the extent that TRADS has pleaded legal conclusions, such inferences are well-supported by its factual allegations.

But this too is beside the point because the five sentences cited by TBO are not legal argument.  Indeed, the only sentence that TBO identifies with a citation to any law comes from paragraph 61.  Mot. 4.  But that paragraph is part of Count I, and appropriately identifies one of the things that TRADS has asked this Court to declare (if necessary).  Compl. ¶ 61.  The remaining four sentences are short, plain, and concise "statement[s] of the claim showing that [TRADS] . . . is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  These five isolated sentences cited by TBO do not bear any resemblance to the "35-page legal argument" included in the "21-count complaint replete with rambling allegations" in *Barrett*.  152 F.R.D. at 53.

In short, the first half of TBO's Motion should be denied because the Complaint complies

7

with Rule 8. It provides notice to TBO of the claims asserted against it.

**II.    TRADS Has Not Sought, And Need Not Plead Entitlement To, An Injunction.**

Proceeding from a false premise to an unwarranted conclusion, TBO next argues that "TRADS'[s] Complaint should be dismissed," apparently in full, because it does not allege "that [TRADS] will suffer irreparable harm or that it does not have an adequate remedy at law." Mot. 6. This argument fails for three reasons.

*First,* TRADS is not seeking an independent injunction against TBO, mandatory or otherwise. Rather, TRADS is requesting a declaration that TBO is violating the Sale Order and to enforce the terms of that order. *See* Compl. ¶¶ 17, 58-69, & Prayer for Relief §§ (c) & (d). The Sale Order itself contained a mandatory injunction directing Poulsen, TBO's purported predecessor-in-interest, "to surrender possession or control of [the] Acquired Assets[, which included the IP,] to the Buyer . . ." and prohibited any "holder of any Interest with respect to the Acquired Assets" from "interfering with [TRADS's] use and enjoyment of the Acquired Assets based on or related to such Interest." Sale Order ¶¶ 14, 19; *Cf.* Compl. ¶¶ 55 & 67. Thus, injunctive relief has already been provided. TRADS simply seeks to enforce its rights and TBO's obligations under the Sale Order against TBO, which has had full knowledge of the Sale Order since its formation.

*Second*, even if TRADS had attempted to plead an independent claim for injunctive relief, such failure would be no reason to dismiss the entirety of TRADS's Complaint. TRADS has requested relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.[4] TBO has neither suggested the absence of an actual controversy nor attacked this Court's jurisdiction. *Cf.* Compl.

---

[4] Additionally, as a portion of the relief that TRADS seeks is a remedy for the infringement of a copyright, Title 17 of the United States Code explicitly authorizes TRADS to seek, and this Court to grant, an injunction. *See* 17 U.S.C. § 502 ("(a) Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.")

6266183-1

¶¶ 20 & 55-57; Sale Order ¶ 20.  "In a case of actual controversy within its jurisdiction , . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  *Cf.* Fed. R. Bankr. P. 7001(9).  The language TBO quotes from *Fernandez v. Bal Harbour Village*, 2014 WL 4824622, *5 (S.D. Fla. 2014), about the need to adequately plead entitlement to injunctive relief to state a claim for the same, *see* Mot. 5-6, is thus irrelevant to TRADS's claim for declaratory relief.[5]  *See, e.g., Steffel v. Thompson*, 415 U.S. 452, 471 (1974) ("[E]ngrafting . . . a requirement that all of the traditional equitable prerequisites to the issuance of an injunction be satisfied before the issuance of a declaratory judgment is considered would defy Congress' intent to make declaratory relief available in cases where an injunction would be inappropriate.").

*Third*, the supposed failure to adequately plead an independent claim for injunctive relief alone does not prevent this Court from granting either the relief it seeks or a mandatory injunction if TRADS obtains a declaratory judgment.  The Declaratory Judgment Act provides that TRADS can obtain "[f]urther necessary or proper relief based on a declaratory judgment . . . against any adverse party whose rights have been determined by such judgment," 28 U.S.C. § 2202.  The failure to adequately plead a separate claim for injunctive relief does not preclude courts from granting injunctive relief where declaratory relief has been granted.  In *Powell v. McCormack*, 395 U.S. 486 (1969), the Supreme Court explained that:

> even if respondents are correct that petitioners' averments [in their complaint] as to injunctive relief are not sufficiently definite, it does not follow that this litigation must be dismissed as moot . . . A court may grant declaratory relief even though it chooses not to issue an injunction or mandamus . . . A declaratory judgment can then be used as a predicate to further relief, including an injunction.

---

[5] Moreover, the injunction claim in *Fernandez* was actually dismissed as moot, rendering the language that TBO quotes mere *dicta*.  *See Fernandez*, 2014 WL 4824622 at *5.

28 U.S.C. s 2202 . . . .

395 U.S. at 498-99 (other citations omitted). [6]

Indeed, even mandatory injunctive relief may be premised upon a declaratory judgment alone. In *Bench Billboard Co. v. City of Covington, Ky.*, 2012 WL 2919158 (E.D. Ky. July 17, 2012), *aff'd*. 547 F. App'x 695 (6th Cir. 2013), the court, citing *Powell*, issued a mandatory injunction, even though the counter-plaintiff "did not request an injunction in its Counterclaim," *id*. at *2-3, because "[t]he injunctive relief requested . . . [was] necessary based on the rights defined in the declaratory judgment," *id*. at *5.

The other authorities cited by TBO are fully consistent with the proposition that injunctive relief is available here. *Moore v. Walter Coke, Incorporated*, 2012 WL 4731255 (N.D. Ala. 2012), directly supports that proposition. After dismissing a "claim for injunctive relief" alone, *Moore* stressed that injunctive relief would remain available as a remedy for the plaintiff's remaining claims, noting that the "[d]ismissal of [the injunctive claim] . . . does not in any way affect plaintiff's prayer for any equitable relief which the court may deem appropriate after adjudication on the merits," *id*. at *20 & n. 12.[7]

In sum, TBO's misplaced fixation on TRADS's purported mandatory injunction claim provides no basis for dismissing any part of the Complaint, let alone all of it.

---

[6] *See also, e.g., United Teacher Associates Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 571 (5th Cir. 2005) ("[A] party can file a motion for further relief requesting monetary damages under § 2202 to effectuate a prior declaratory judgment."); *Gant v. Grand Lodge of Texas*, 12 F.3d 998, 1002 (10th Cir. 1993) (28 U.S.C. § 2202 "authorizes the court to grant relief that was not demanded or relief that was not even proved in the original declaratory judgment action." (citation omitted) (internal quotation marks omitted)).

[7] TBO has similarly mischaracterized *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327 (S.D. Fla. 2012). *Cf.* Mot. 6. *Perret* did not "dismiss[] a claim 'for declaratory . . . relief'" because "the plaintiffs had 'not pled the elements to demonstrate a right to injunctive relief and . . . [had] not alleged the lack of an adequate remedy at law.'" Mot. 6 (quoting *Perret*, 846 F. Supp. 2d at 1333-34). Rather, that rationale extended only to the dismissal of the claim for injunctive relief. *Perret*, 846 F. Supp. 2d at 1334. The declaratory relief claim was dismissed because it was unclear as to whether it was brought under Florida or federal law, and *Perret* expressly authorized filing an amended complaint seeking relief under the federal Declaratory Judgment Act. *Id*. at 1333-34.

10

## CONCLUSION

For the foregoing reasons, TBO's Motion to Dismiss should be **DENIED,** and TBO should be ordered to serve its answers and affirmative defenses to the Complaint no later than seven days from the entry of this Court's Order.

Dated: March 9, 2015

Respectfully submitted,

/s/ *Brian K. Gart*
Brian K. Gart
BERGER SINGERMAN LLP
350 East Las Olas Blvd., Suite 1000
Fort Lauderdale, Florida 33301
Phone (954) 712-5130
Fax: (954) 523-2872
Florida Bar No. 381152

   -and-

Philip D. Anker (admitted *pro hac vice*)
Douglas F. Curtis
Marc M. Allon (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Phone: (212) 230-8800
Fax: (212) 230-8888

*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on this 9th day of March, 2015, by electronic transmission through the Court's CM/ECF system upon all parties on the attached CM/ECF Service List, and via first class, U.S. Mail upon all parties on the attached Service List.

By: _/s/ Brian K. Gart_
     Brian K. Gart

## **CM/ECF SERVICE LIST**

- Philip D. Anker	philip.anker@wilmerhale.com, yolande.thompson@wilmerhale.com
- Robbie T Boone	rboone@bergersingerman.com
- Brian K Gart	bgart@bergersingerman.com, clamb@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com
- Alvin S. Goldstein	rstanley@furrcohen.com, atty_furrcohen@bluestylus.com
- Arthur H Rice	arice.ecf@rprslaw.com
- Lisa M Schiller	lschiller.ecf@rprslaw.com

## SERVICE LIST

Dennis Richard, Esq.
Richard and Richard, P.A.
825 Brickell Bay Drive
Tower III, Suite 1748
Miami, FL 33131

6266183-1